IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH HINDEN,<br><br>            Plaintiff,<br><br>v.<br><br><br>INNERWORKINGS, INC., CHARLES K. BOBRINSKOY, LINDSAY Y. CORBY, DAVID FISHER, JACK M. GREENBERG, ADAM J. GUTSTEIN, JULIE M. HOWARD, KIRT P. KARROS, RICH STODDART, and MARC ZENNER,<br><br>            Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Hinden ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by InnerWorkings, Inc. ("InnerWorkings" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning InnerWorkings and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against InnerWorkings and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to HH Global Limited ("HH Global") (the "Proposed Transaction").

2. On July 16, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with HH Global. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $3.00 per share of InnerWorkings owned (the "Merger Consideration").

3. On August 21, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against InnerWorkings and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to InnerWorkings shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of InnerWorkings shares.

9. Defendant InnerWorkings is incorporated under the laws of Delaware and has its principal executive offices located at 203 North LaSalle Street, Suite 1800, Chicago, Illinois 60601. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "INWK."

10. Defendant Charles K. Bobrinskoy ("Bobrinskoy") is and has been a director of InnerWorkings at all times during the relevant time period.

11. Defendant Lindsay Y. Corby ("Corby") is and has been a director of InnerWorkings at all times during the relevant time period.

12. Defendant David Fisher ("Fisher") is and has been a director of InnerWorkings at all times during the relevant time period.

13. Defendant Jack M. Greenberg ("Greenberg") is and has been the Chairman of the Company's Board at all times during the relevant time period.

14. Defendant Adam J. Gutstein ("Gutstein") is and has been a director of InnerWorkings at all times during the relevant time period.

15. Defendant Julie M. Howard ("Howard") is and has been a director of InnerWorkings at all times during the relevant time period.

16. Defendant Kirt P. Karros ("Karros") is and has been a director of InnerWorkings at all times during the relevant time period.

17. Defendant Rich Stoddart ("Stoddart") is and has been a director of InnerWorkings at all times during the relevant time period.

18. Defendant Mark Zenner ("Zenner") is and has been a director of InnerWorkings at all times during the relevant time period.

19. Defendants Bobrinskoy, Corby, Fisher, Greenberg, Gutstein, Howard, Karros, Stoddart, and Zenner are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, along with Defendant InnerWorkings, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21. InnerWorkings is a global marketing supply chain company that provides global print management and promotional solutions to corporate clients across a range of industries.

4

The Company offers a full range of fulfillment and logistics services that allow it to procure marketing materials of virtually any kind.

## The Company Announces the Proposed Transaction

22. On July 16, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> LONDON & CHICAGO--(BUSINESS WIRE)--InnerWorkings, Inc. (NASDAQ: INWK) ("InnerWorkings") and HH Global Group Limited ("HH Global") today announced that they have signed a definitive agreement to combine operations. Under the terms of the agreement, HH Global will acquire InnerWorkings for $3.00 per share in an all-cash transaction representing approximately $177 million in equity value. This represents a premium of 127% to the closing price, and a premium of 104% to the 90-day volume weighted average price as of July 15, 2020. The transaction has been unanimously approved by the Boards of Directors of both companies.
>
> "Over the past several months, we've been taking actions to put InnerWorkings in the best position to weather the challenging environment in which we're operating," said Rich Stoddart, Chief Executive Officer of InnerWorkings. "In these times of significant economic uncertainty, the Board of Directors and management determined to undertake a comprehensive process to preserve and enhance value for shareholders. After exploring a range of financing and strategic alternatives, and implementing meaningful cost saving measures in response to the COVID-19 pandemic, we're confident this combination represents the best path forward for our shareholders and InnerWorkings. In addition to delivering an immediate cash premium to our shareholders, the combination will create a company with a stronger balance sheet and will enhance our ability to accelerate our transformation and serve our client base."
>
> Robert MacMillan, Chairman and Group CEO of HH Global, said, "We are thrilled about this combination as it significantly accelerates our ability to execute on the next phase of our strategy by broadening our service offering and expanding our global reach. Not only do our two companies have complementary offerings, capabilities and geographic operations, but we also share a deep commitment to quality, innovation and operational excellence. We have long admired InnerWorkings and have got to know the management team well over the last few months, and we are confident that together we will create an even stronger company. We look forward to welcoming InnerWorkings to the HH Global family."

**Strategic Rationale**

The combination will result in a world-class marketing engineering and execution firm that is well-positioned to serve global clients seeking innovative, end-to-end marketing solutions that lower costs and improve brand consistency, visibility, sustainability and speed to market. With complementary offerings and capabilities, InnerWorkings' leading North American position and HH Global's strong leadership presence in EMEA and APAC, the combined company will operate with global reach and scale, maintaining the agility and client-focused execution that is core to both InnerWorkings and HH Global's strategic approach.

Together, the two companies will have a stronger operating model and balance sheet and will be well-positioned to continue InnerWorkings' transformation and to build and maintain long-term client relationships as a true first-choice partner for leading brands. In addition, the combined company will benefit from the support of funds managed or advised by Blackstone Tactical Opportunities, an existing strategic minority equity investor in HH Global.

**Additional Transaction Details**

Under the terms of the merger agreement, HH Global will acquire all of the outstanding shares of InnerWorkings common stock for $3.00 per share in cash which represents a premium of 127% to the closing price and a premium of 104% to the 90-day volume weighted average price as of July 15, 2020.

The transaction is subject to customary closing conditions, including approval by InnerWorkings' shareholders and receipt of certain regulatory approvals, and is expected to be completed before the end of the fourth quarter of 2020.

Citigroup Global Markets Inc. is serving as exclusive financial advisor to InnerWorkings and Sidley Austin LLP is serving as legal counsel. Moelis & Company LLC is acting as HH Global's exclusive financial advisor and Kirkland & Ellis LLP is serving as legal counsel.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23. On August 21, 2020, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

25. The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to, Adjusted EBITDA.

29. In addition to the above, the Company must disclose its original pre-COVID-19 2020 annual operating plan and underlying line items, as it is material to shareholders in understanding the above projections prepared by the Company's management.

30. In sum, disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Citigroup's Financial Opinion

31. The Proxy Statement contains the financial analyses and opinion of Citigroup Global Markets Inc. ("Citigroup") concerning the Proposed Transaction, but fails to provide material information concerning such.

32. With respect to Citigroup's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the Company's Terminal Values; (ii) the inputs and assumptions underlying Citigroup's selection of discount rates ranging from 13.0% to 15.2%; (iii) the inputs and assumptions underlying Citigroup's selection of discount rates ranging from 15.7% to 18.8% reflecting the potential for a higher cost of capital due to the COVID-19 pandemic; (iv) the inputs

and assumptions underlying Citigroup's selection of perpetuity growth rates ranging from 3.0% to 4.0%; and (v) the Company's terminal year unlevered, after-tax free cash flows.

33. With respect to Citigroup's *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose (i) the individual multiples and metrics for the each of the specific transactions observed by Citigroup in its analysis; and (ii) the inputs and assumptions underlying Citigroup's selection of Adjusted EBITDA Multiples ranging from 4.6x to 5.4x.

34. Lastly, the Proxy Statement notes that "Citi and its affiliates in the past have provided and in the future may provide investment banking, commercial banking and other similar financial services to the Company unrelated to the proposed merger, including, during the approximately two-year period prior to the date of Citi's opinion, having provided financial advisory services in respect of certain potential transactions that were not consummated." However, the Proxy Statement fails to disclose the compensation that Citigroup has received or stands to receive from the Company in connection with said services.

35. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of InnerWorkings within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of InnerWorkings, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 26, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*